UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROBERT L. HOLLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00574-JMS-MG |
| | ) | |
| S. FISCHER, | ) | |
| RICHARD BROWN, | ) | |
| ELISE MCDANIEL, | ) | |
| HIATT, | ) | |
| H. BLASINGAME, | ) | |
| BENEFIEL, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment**

Robert Holleman has a long and acrimonious relationship with Indiana prison officials. He has filed many grievances, complaints, and lawsuits, and he has often prevailed. *See Holleman v. Zatecky*, 951 F.3d 873, 875 (7th Cir. 2020) ("Robert Holleman is the quintessential jailhouse lawyer, and he has achieved notable success in that role."). This case is the latest chapter. Mr. Holleman contends various officials at Wabash Valley Correctional Facility retaliated against him by conducting a "shake down" of his cell twice in one week and falsely charging him with a conduct violation for making an unauthorized financial transaction. For the reasons that follow, Defendants' motion for summary judgment is **granted**.

**I. Background**

Some prior history will help contextualize the claims at issue here. From 2012 until 2015, Mr. Holleman was housed at Pendleton Correctional Facility. He had a "troubled history" at Pendleton. *Zatecky*, 951 F.3d at 876. So much so that in October 2015, Dushan Zatecky, the Warden at Pendleton, reached out to Richard Brown, the Warden at Wabash Valley, to see if Mr.

1

Holleman could be transferred. *Id.* Warden Brown agreed, and Mr. Holleman was transferred to Wabash Valley in November 2015. *Id.* None too pleased with the transfer, Mr. Holleman responded with a lawsuit against both Wardens (and various other officials) contending the transfer was retaliatory in violation of the First Amendment. *See Holleman v. Zatecky*, 2:16-cv-00305-JRS-DLP (S.D. Ind. July 28, 2016) (Dkt. 1) (the "*Zatecky* Lawsuit"). During discovery in the *Zatecky* Lawsuit, on January 31, 2018, Mr. Holleman deposed Warden Brown. Dkt. 59-1, Deposition of Robert Holleman at 16. This deposition is the key event (protected activity) that forms the basis of his claims in this lawsuit: the cell searches and the disciplinary charge.

### A.    The Cell Searches

On January 31, 2018, the same night as the deposition in the *Zatecky* Lawsuit, Mr. Holleman was subjected to a cell "shake-down." Dkt. 59-1 at 16. The search was conducted by "Officer Wentz" and several other unnamed defendants. *Id.* They searched Mr. Holleman's cell and his person, but they did not find any contraband. *Id.* Mr. Holleman did not notice any other cells being searched. *Id.* at 18. There is no admissible record evidence as to who ordered the search or why it was conducted.[1]

Searches like these were the norm at Wabash Valley. *Id.* at 19 ("Q: Do you acknowledge, though, that cell searches are a routine part of being in a DOC facility and that no cause is needed to search a cell? Mr. Holleman: I do."); *id.* at 20 (Q: [Y]our cell had been searched before this; is that correct? Mr. Holleman: It had."). Additionally, Mr. Holleman "had no problem with them

---

[1] Mr. Holleman states that he asked Officer Wentz to identify the reason for the search, and Officer Wentz responded the search "had [come] from someone in the administration building." *Id.* at 18. But that statement is hearsay as Officer Wentz is not a named party in this suit. Mr. Holleman's attempts to shoehorn this evidence into the present sense impression and excited utterance exception, dkt. 90 at 2, are unpersuasive.

doing their job [and] conducting the search." *Id.* at 17. And the officers did not treat Mr. Holleman with disrespect or do anything out of the ordinary. *Id.* at 22.

Six days later, on February 6, Mr. Holleman's cell was searched again. *Id.* at 22. The exact same officers on the exact same shift searched his cell. *Id.* As before, Mr. Holleman did not notice any other cells being searched, and the officers did not find any contraband. *Id.* at 22 – 23.

### B.    The Disciplinary Charge

Indiana Department of Correction policy forbids inmates from transferring money to other inmates as well as inmates transferring money to the friends or family of other inmates. *See Crawford v. Littlejohn*, 963 F.3d 681, 682 (7th Cir. 2020) (noting Indiana's prison policy prohibits engaging in unauthorized financial transactions).[2]

On February 5, 2018, at 7:40 p.m., Mr. Holleman e-mailed his fiancée, requesting that she send money to two people—one who was located in Pendleton, Indiana and one who was located in Michigan City, Indiana:

> I do need a small favor or two (2) from you, I still have two (2) people (one at Pendleton and one (1) at Michigan City that I want to send money to. I would like for you to do that after I send you money for all of it. And, then I would like to keep a little money with you (mad money, so to speak) so I don't have to go to my Sister or to the bank all of the time. Can you or will you do that for me. It is not contingent on you doing this for me that I am going to give you the B'day money, just so you know, so do not feel obligated, if you do not want to do it.

Dkt. 57 -1 at 31.

His fiancée responded at 9:40 p.m. that she could not do it on JPay (the facility's payment system) because she "can only have one offender at a time":

> As for the money thing, that's fine. Just give me the instructions I need, and I'll get the money to those guys. Just so you know, I can't do it here on JPay. We can have only one offender at a time. So I will need detailed instructions from you on how

---

[2] The actual policy is not in the record, but Mr. Holleman does not dispute that transferring money to other inmates or to friends and family of other inmates violates the policy. Dkt. 59-1 at 28.

to get that done. It will be interesting to see how you will spend you [sic] "mad money." Lol!

*Id.* at 33.

The following morning, on February 6, 2018 at 8:00 a.m., an officer with the Office of Investigations and Intelligence, S. Carpenter, issued a report of conduct charging Mr. Holleman with violating prison policy B-220, which prohibits inmates from engaging in an unauthorized financial transaction. *Id.* at 29. The charge was based on his JPay message and the fact that there are prisons in both Pendleton and Michigan City.

The next day, February 7, Mr. Holleman sent a response to his fiancée, listing the addresses of the two individuals he was attempting to send money to:

> I will send you the name's and address's for the guys regarding the money. One is a lifelong friend who lives in Pendleton, the other also a lifelong friend of my little brother and mine who lived across the street from us growing up; he's the one who lives in Michigan City.
>
> The address for Robert [omitted] is 844 white Eagle Ridge Michigan City, Indiana, and the other address is for Michael [omitted] 10211 Hidden Meadow Lane, Pendleton, Indiana, you can send money orders to both.

*Id.* at 16. His fiancée responded that she was concerned about locating these individuals:

> The money thing is fine. No big deal at all. The problem may be finding these guys. Are these current addresses where they lived before? I looked up your guys. Are they both suppose to be in prison? I couldn't find Robert [omitted] at all. I also did a search to confirm what you gave me. I came up with nothing. I found a Michael [omitted] in Pendleton, but he was a lot younger that you told me. You mentioned before he was 71. I have one about 10 years younger who was sentenced in 1982 for criminal deviate conduct.

*Id.* at 9.

Mr. Holleman received the conduct report on February 8, 2018. The conduct report was only based on the first E-mail Mr. Holleman sent on February 5 and his fiancée's response. The

report was not based on the subsequent email he sent or his fiancée's second response. A screening report was issued, and Mr. Holleman entered a plea of not guilty. Dkt. 59-1 at 34.

On February 20, 2018, a disciplinary hearing was held. *Id.* at 34. The hearing officer assigned to the case was Lieutenant Fischer. *Id.* at 44. Mr. Holleman believed something "nefarious" was going on because Lieutenant Fischer only chaired disciplinary proceedings for the other side of the facility. *Id.*

Mr. Holleman contested the charge. He sought to introduce his follow-up e-mail to his fiancée because that e-mail demonstrated the intended recipients of his money had public addresses and were not incarcerated. *Id.* at 35. He also sought to dismiss the charges on the ground that the conduct report was not signed. *Id.* at 35 – 36. Lieutenant Fischer rejected Mr. Holleman's signature argument, excluded the subsequent e-mail, and found Mr. Holleman guilty of the charge based on the report of conduct, statement of Mr. Holleman, the copy of the e-mails, and the video evidence. Dkt. 57-1 at 23. Mr. Holleman received a written reprimand and loss of kiosk privileges for twenty-one days. *Id.*

Mr. Holleman appealed Lieutenant Fischer's decision. *Id.* at 18. Elise McDaniel was assigned to review the appeal, and she denied Mr. Holleman relief. Dkt. 59-1 at 38. Mr. Holleman then appealed Warden Brown, who ultimately reversed Lieutenant Fischer's decision and directed Mr. Holleman to refile his initial CAB appeal. *Id.* at 39; dkt. 57-2. Mr. Holleman asserts Warden Brown granted his request because he warned Warden Brown he was "headed into federal court" if his conviction was not overturned. *Id.* at 39.

Mr. Holleman again pled not guilty, and a second disciplinary hearing was held on May 11, 2018. *Id.* at 40. The second hearing was assigned to Officer Hiatt. *Id.* He considered the previously excluded e-mail but still found Mr. Holleman guilty. Dkt. 57-1 at 5. Mr. Holleman

received a more severe punishment this time: thirty days loss of kiosk, thirty days loss of phone, and modified visits[3] for six-months.[4] *Id.*; *see also* Dkt. 59-1 at 41. Mr. Holleman's punishment was not offset from sanctions of the first hearing. Dkt. 1, Complaint ¶ 8. Mr. Holleman alleges taking visits away was not a part of the policy governing B-220 violations, and that the policy was changed just so his visits could be taken. Dkt. 59-1 at 60.

After the hearing, Mr. Holleman had two conversations with Officer Hiatt. The first came minutes after the hearing, when Officer Hiatt told Mr. Holleman "that if this just was just a regular officer who had written [you] up for this conduct, [I] would have let [you] beat it or win the case." *Id.* at 40. But "since it was the Office of Investigations and Intelligence, [Officer Hiatt] had to find [Mr. Holleman] guilty because [Officer Hiatt] didn't want to have to explain it to them." *Id.* at 41 – 42; *see also* Dkt. 1, Complaint ¶ 47. Officer Hiatt also indicated that "he was being pressured by Warden Brown" to come back with a guilty finding, and that Mr. Holleman was "not a popular guy at Wabash Valley" because of his legal pursuits. Dkt. 69-1, Holleman Affidavit ¶ 6. Officer Hiatt finally told Mr. Holleman that Warden Brown "had personally put both Lieutenant Fischer and him in place to chair both of [the] CAB hearings" to "be certain of a guilty finding." *Id.* ¶ 8. The second conversation came after this lawsuit was filed when Officer Hiatt told Mr. Holleman "he made a mistake when he found [Mr. Holleman] guilty and that he understands [Mr. Holleman] filed a lawsuit against him." *Id.* at 53.[5]

---

[3] His modified visits consisted of visiting in a "booth through a glass-type visit." Dkt. 59-1 at 41.

[4] The six-months ended up becoming seven months because Mr. Holleman never requested to be removed from the visit modification list. *Id.* at 61. Mr. Holleman did not know he had to do this and felt like the sanction should have automatically terminated. *Id.* at 62.

[5] Officer Hiatt declines he made such statements, Dkt. 84-1, but the Court resolves all factual disputes in Mr. Holleman's favor. *Baptist*, 827 F.3d at 599.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021).  A "genuine dispute" exists when a reasonable factfinder could find in favor of the nonmoving party. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And "material facts" are those that might affect the outcome of the suit. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

Once the moving party submits a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to demonstrate there is a factual dispute or that the moving party is not entitled to judgment as a matter of law. *See* S.D. Ind. L. R. 56-1(b); *see also Weaver*, 28 F.4th at 820. "[T]he nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine [dispute] for trial." *Burton v. Kohn*, 934 F.3d 572, 579 (7th Cir. 2019).

The record at summary judgment consists only of the admissible evidence submitted by the parties. *See* S.D. Ind. L.R. 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."). The Court does not "scour every inch of the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Admissible evidence can include a *pros se* party's pleadings or briefs, but only if they are signed under the penalty of perjury. *See Jones v. Van Lanen*, 27 F.4th 1280, 1285 – 86 (7th Cir. 2022) ("[T]he law allows verified complaints—containing not just allegations but sworn statements of fact—to serve as evidence for purposes of summary judgment."); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("By

declaring under the penalty of perjury that the response was true, [a plaintiff can] convert [a] response . . . into an affidavit.").

The purpose of summary judgment is to determine the need for trial. The record is viewed in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572 – 73 (7th Cir. 2021). That means all facts are construed and all inferences are drawn in favor of the nonmoving party. *See v. Illinois Gaming Board*, 29 F.4th 363, 368 (7th Cir. 2022). The goal is not to decide which party's facts are more likely true; it is only to decide whether a trial is necessary. *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021). If a jury could rationally find in favor of the nonmoving party, then summary judgment must be denied. *E.g. Jones*, 27 F.4th at 1285. If no rational jury could find in favor of the non-moving party, then summary judgment must be granted. *E.g. Pulera v. Sarzant*, 966 F.3d 540, 551 – 52 (7th Cir. 2020).

### III. Discussion

The Court begins with a few housekeeping matters. First, Mr. Holleman states that his claims against Officer Benefiel can be dismissed. Dkt. 69 at 24 n. 5. Accordingly, Defendants' motion for summary judgment on Mr. Holleman's claims against Officer Benefiel is **granted**.

Second, Mr. Holleman contends he is entitled to summary judgment on his failure to train claims and "vague unconstitutional policies / procedures" claims. Dkt. 69 at 24. But the Court's screening Order only permitted retaliation claims to proceed in this lawsuit, and Mr. Holleman never objected to that order. Dkt. 7 at 4. Even taking these claims at face value, neither one is plausible. A stand-a-lone failure to train claim is not cognizable against the warden of a facility. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) ("[F]ailure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality.") (quoting *Sanville v. McCaughtry*,

266 F.3d 724, 732 (7th Cir. 2001)). And the Seventh Circuit has found that the Prison Code provision under which Mr. Holleman was found guilty—B-220 (engaging in unauthorized financial transactions)—is not unconstitutionally vague. *Crawford v. Littlejohn*, 963 F.3d 681, 684 (7th Cir. 2020). To the extent these claims remain, these claims are therefore **dismissed**. The Court now turns to the remaining retaliation claims in this case.

### A.      First Amendment Legal Standard

The First Amendment generally prohibits government officials from retaliating against individuals for engaging in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). For an inmate to prevail on a First Amendment retaliation claim, the inmate must show (1) he engaged in protected First Amendment activity; (2) an adverse action was taken against him; and (3) his protected conduct was at least a motivating factor of the adverse action (causation). *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). If the inmate can establish a prima facie case of retaliation, the burden shifts to the defendants to show that they would have taken the same action even in the absence of the inmate's protected activity. *See v. Illinois Gaming Board*, 29 F.4th 363, 368 (7th Cir. 2022).

When an inmate brings a retaliation claim based on a disciplinary proceeding, the rule of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) applies. Under *Mt. Healthy*, even if a plaintiff makes out a *prima facie* case of retaliation, a defendant may nonetheless be entitled to summary judgment if he can show, by a preponderance,[6] the same decision would have been reached anyway. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (applying *Mt.*

---

[6] This standard varies from circuit to circuit, *Watson v. Rozum*, 834 F.3d 417, 425 (3d Cir. 2016) (collecting cases),  but the Seventh Circuit requires the Defendant show by a preponderance of the evidence that he would have taken the same action anyway. *See Greene*, 660 F.3d at 979 (citing *Mt. Healthy* for the preponderance standard).

*Healthy* to a prisoner retaliation claim and holding even if a plaintiff satisfies his burden of establishing a *prima facie* case of retaliation, a defendant may nonetheless rebut such claim by showing the harm would have occurred anyway); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (same); *Winston v. Fuchs*, 837 F.App'x 402, 404(b) (7th Cir. 2020) (same); *see also Martin v. Duffy*, 977 F.3d 294, 301 – 02 (4th Cir. 2020) (collecting cases applying *Mt. Healthy* to prisoners' retaliation claims after being charged with misconduct).

Mr. Holleman has brought two claims of retaliation. First, Mr. Holleman contends Team Manager Heather Blasingame and Warden Brown orchestrated the two cell searches in retaliation for him deposing Warden Brown. Second, Mr. Holleman contends Lieutenant Fischer, Warden Brown, Elise McDaniel, Lieutenant Hiatt, and Team Manager Blasingame found him guilty of a false disciplinary charge and imposed severe sanctions on him in retaliation for deposing Warden Brown. The Court takes up each argument.

### B.    The Cell Searches

Here, summary judgment is appropriate because the cell searches in this case are not sufficiently adverse to "likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). The two searches were conducted in a span of one week. The officers did not treat Mr. Holleman disrespectfully, they did not do anything "out of the ordinary," and there is no evidence anything was destroyed or Mr. Holleman was otherwise harmed. Dkt. 59-1 at 16, 17, 22; *cf. Benson v. Arnold*, 2:19-cv-00491-JRS-DLP, 2022 WL 377251, at *2 (S.D. Ind. Feb. 8, 2022) (denying summary judgment on retaliation claims premised on cell search where inmate's property was destroyed and his knee brace was torn). Mr. Holleman acknowledged that cell searches are routinely executed and his cell had been searched previously. *Id.* at 19, 20; *see also Hudson v. Palmer*, 468 U.S. 517, 529-530

(1984) ("[W]holly random searches are essential to the effective security of penal institutions."). Given this record, the Court concludes these searches were not sufficiently adverse to deter a person of ordinary firmness from engaging in First Amendment activity. *Griffin v. Evans*, No. 1:19-cv-00882-JPH-MPB, 2021 WL 4034876, at *14 (S.D. Ind. Sep. 2, 2021) ("Because prison officials can search an inmate's cell at any time, such searches are not likely to deter inmates from exercising their First Amendment rights."). Manager Blasingame and Warden Brown's motion for summary judgment on these claims is therefore **granted**.[7]

### C.    The Disciplinary Charge

The first two elements of Mr. Holleman's *prima facie* case with respect to his disciplinary charge claim are not disputed. Mr. Holleman engaged in protected activity by litigating against Warden Brown in the *Zatecky* Lawsuit, and a jury could find the disciplinary charge and subsequent adjudication was an adverse action as Mr. Holleman received multiple sanctions which included loss of commissary, loss of phone privileges, and modified visits for seven months. *Douglas*, 964 F.3d at 646. Defendants do not dispute as much.

The key questions therefore are whether Mr. Holleman has adduced sufficient evidence of retaliatory animus for each Defendant, and if so, whether Defendants can show by a preponderance that they would have taken the same action anyway. *Greene*, 660 F.3d at 979.

---

[7] Mr. Holleman answered "yes" in his deposition when asked if he was subjected to a "strip search" in addition to a cell search. Dkt. 59-1 at 17; *see e.g. Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) (gratuitous and humiliating strip searches can support a retaliation claim). However, there is no other evidence in the record on this score. Mr. Holleman has not explained whether and to what extent he was subject to such a search, and he does not mention a strip search in his complaint or his briefing. Accordingly, the Court finds that any argument premised on retaliation due to a strip search (as opposed to a cell search) has been forfeited. *See Ricci v. Salzman*, 976 F.3d 768, 771 n. 2 (7th Cir. 2020) ("Forfeiture occurs when a party fails to make an argument because of accident or neglect.") (cleaned up).

As to Elise McDaniel, summary judgment is appropriate because there is no evidence that her actions were motivated by animus to get back at Mr. Holleman for deposing Warden Brown. Mr. Holleman's only evidence is that she denied his appeal after the first disciplinary hearing, and Warden Brown eventually reversed her decision. There is no evidence that she made any comments demonstrating animus nor is there any evidence she was aware that Mr. Holleman deposed Warden Brown. There is also no evidence (beyond speculation) that Warden Brown somehow influenced her decision. The fact that she denied his appeal, and her decision was later reversed is insufficient, without more, to demonstrate she retaliated against him. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("A single retaliatory charge that is later dismissed is insufficient to serve as the basis of a § 1983 action."). Without any additional evidence, Mr. Holleman cannot carry his burden, and so Defendants' motion for summary judgment with respect to Elise McDaniel is **granted**.

The same conclusion can be reached as to Lieutenant Fischer. Before the first disciplinary hearing, Mr. Holleman had not had any interaction with Lieutenant Fischer; he had not filed any grievances against Lieutenant Fischer, and he had not named Lieutenant Fischer as a defendant in any lawsuit prior to this one. Dkt. 59-1 at 43 – 44. Mr. Holleman asks this Court to find sufficient evidence of animus from the facts that Lieutenant Fisher (1) excluded the purported exculpatory e-mail from the first hearing proceeding, (2) presided over the hearing proceeding despite usually chairing disciplinary hearings on the other side of the facility; and (3) was placed by Warden Brown, according to Officer Hiatt, to chair the first proceeding to ensure Mr. Holleman would be found guilty. Dkt. 69-1, ¶ 8. The first assertion, without more, does not raise an inference of animus. The second assertion is too speculative to preclude summary judgment, *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). The third assertion relies on the Officer Hiatt's

statement as to Warden Brown's state of mind, which is inadmissible under Fed. R. Evid. 602. Accordingly, Defendants' motion for summary judgment with respect to Lieutenant Fischer is **granted**.

Turning now to Defendants Warden Brown, Team Manager Blasingame, and Officer Hiatt, the analysis is somewhat different. Mr. Holleman has likely made out a *prima face* case of retaliation against these Defendants. Warden Brown was a defendant in the *Zatecky* Lawsuit; Mr. Holleman's disciplinary proceeding was brought less than a month after Mr. Holleman deposed Warden Brown; and, according to Officer Hiatt, Warden Brown pressured Officer Hiatt to come back with a guilty finding because Mr. Holleman was "not a popular guy at Wabash Valley" because of his legal pursuits. Dkt. 69-1, ¶ 6. Similarly, Team Manager Blasingame was a named party in the *Zatecky* Lawsuit, she had called Mr. Holleman a "trouble maker" prior to him getting charged, dkt. 69-1 at 4, and she modified his visits for six-months after the second disciplinary hearing, even though he had already served a punishment from the first hearing and other offenders committed the same violation but never had their visits modified. Dkt. 1 ¶ 50. Officer Hiatt found Mr. Holleman guilty but told Mr. Holleman afterward he would have let him win the case, but he didn't want to explain have to explain it to the Office of Intelligence and Investigation. Dkt. 59-1 at 41 – 42; *see also* Dkt. 1, Complaint ¶ 47. And again, Officer Hiatt also told Mr. Holleman he was pressured by Warden Brown to find Mr. Holleman guilty because Mr. Holleman was not a popular guy at Wabash Valley. Though the evidence is thin, this is sufficient to demonstrate each of these Defendants were at least motivated by Mr. Holleman's prior protected activity. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (explaining circumstantial evidence may establish a causal link between the protected activity and adverse action).

Summary judgment is nonetheless appropriate because even if Mr. Holleman's protected activity played a role in their actions, the evidence establishes he would have been found guilty anyway. *Greene v. Doruff*, 660 F.3d at 979. It is undisputed Mr. Holleman sent a message to his fiancée asking for a favor and requesting that she send money to two individuals in Michigan City and Pendleton—locations where there are state prisons. Dkt. 57-1 at 31. It is likewise undisputed she responded that she could "only have one *offender* at a time" and that she could not do it on JPay. *Id.* at 33. The Department of Corrections policy forbids inmates from sending money to other inmates or to friends and families of other inmates, dkt. 59-1 at 28, and the disciplinary charge was brought by a non-party, for whom there is no evidence of animus. While Mr. Holleman was not permitted to introduce what he deems as an exculpatory e-mail in his first disciplinary hearing, it is undisputed that he was able to present it during his second disciplinary hearing, and he was still found guilty. Based on this record, even stripping away Defendants' purported animus, Mr. Holleman still would have been charged and found guilty, and so summary judgment is appropriate. *See Smith v. Mosley*, 532 F.3d 1270, 1279 (11th Cir. 2008) (affirming grant of summary judgment on retaliation claim where prisoner's letter to warden was sufficient to support a disciplinary charge notwithstanding allegations that the decision to bring the disciplinary charge was retaliatory).

Mr. Holleman insists that his response e-mail was exculpatory, so there is at least a question of fact as to whether he should have been found guilty of engaging in an unauthorized financial transaction. He is mistaken. While it is true that his response e-mail contained public two addresses which were purportedly associated with his friends to whom he was sending the money, dkt. 57-1 at 16, his fiancée's reply showed these "friends" were likely inmates sufficient to support a guilty finding:

> The money thing is fine. No big deal at all. The problem may be finding these guys. Are these current addresses where they lived before? I looked up your guys. Are they both suppose to be in prison? I couldn't find Robert [omitted] at all. I also did a search to confirm what you gave me. I came up with nothing. I found a Michael [omitted] in Pendleton, but he was a lot younger that you told me. You mentioned before he was 71. I have one about 10 years younger who was sentenced in 1982 for criminal deviate conduct.

*Id.* at 9. Mr. Holleman's e-mail was therefore not exculpatory; or at the least, Officer Hiatt was reasonable in not finding it exculpatory.

Mr. Holleman also contends there is a material factual dispute as to whether he would have nonetheless been found guilty even if he engaged in an unauthorized financial transaction. He points to the conversation Officer Hiatt had after the hearing in which Officer Hiatt told him Warden Brown pressured Officer Hiatt to find him guilty; that he was not a popular guy at Wabash; and that Warden Brown placed Lieutenant Fischer and Officer Hiatt as the hearing officers to ensure he was found guilty. But even accepting those statements attributed to Officer Hiatt, Mr. Holleman does not dispute the underlying factual basis for the disciplinary charge. *Cf. Holleman v. Day*, No. 2:18-cv-00059, 2021 WL 4477801, at *4 (S.D. Ind. Sep. 29, 2021) (denying summary judgment on retaliation claim against disciplinary hearing officer where there was a dispute as to whether the underlying conduct report was false). Nor does he dispute that the underlying disciplinary charge was issued by a non-party who believed a conduct violation had been committed. Dkt. 57-1 at 29. Put simply, he does not dispute any of his conduct—just whether his conduct amounted to a violation or whether he would have been found guilty in any event. And mindful that disciplinary convictions are usually upheld under the "some" evidence standard, *Crawford*, 963 F.3d at 683, the Court finds Mr. Holleman would still have been found guilty, and so any motivation to retaliate would "have done no work, had no effect, left the world unchanged." *Greene*, 660 F.3d at 978.

Accordingly, Defendants motion for summary judgment with respect to Warden Brown, Team Manager Blasingame, and Officer Hiatt is **granted**.

### IV. Conclusion

For those reasons, Defendants' motion for summary judgment, dkt. [57], is **granted**. Final judgment shall enter accordingly.

**SO ORDERED.**

Date: 8/10/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ROBERT L. HOLLEMAN
VOLUNTEERS OF AMERICA
611 N Capitol Ave
Indianapolis, IN 46204

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov